**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amanda K. Horton, et al., <br><br> Plaintiff, <br><br> vs. <br><br> USAA Casualty Insurance Company, a foreign insurer, et al., <br><br> Defendant. | No. CV-06-2810-PHX-DGC <br><br> **ORDER CONDITIONALLY CERTIFYING SETTLEMENT CLASS, PRELIMINARILY APPROVING SETTLEMENT AND FORM OF NOTICE, DIRECTING THAT NOTICE BE SENT, AND SETTING FINAL APPROVAL HEARING** |

Plaintiffs Amanda K. Horton and Keith Alstrin, and Defendants United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company, USAA County Mutual Insurance Company, and Garrison Insurance Company (collectively "USAA"), have entered into an amended class action settlement agreement, dated November 13, 2009 (the "Amended Agreement"), to settle the above-captioned action ("Lawsuit"). They seek an order conditionally certifying the settlement class, preliminarily approving the settlement and form of notice, directing that notice be sent, and setting a final approval hearing (Dkt. #103) (the "motion for preliminary approval"). The Amended Agreement replaces the class action settlement agreement approved by this Court on July 3, 2006 (the "Original Agreement"). The Amended Agreement sets forth the terms and conditions of the proposed settlement and dismissal with prejudice of this lawsuit.

## I. Objectors' arguments.

Third Party Rebecca Olson, on behalf of herself and Roman Olson (collectively "the Objectors"), has filed a response objecting to the motion for preliminary approval. Dkt. #104. Plaintiffs have replied to the objection. Dkt. #106. Oral argument was held on November 20, 2009. The Court finds the Objectors' arguments unpersuasive and will grant the motion for preliminary approval. Dkt. #103.

### A. Background.

USAA is an insurance company that offers automobile insurance coverage. Dkt. #103 at 3. Plaintiffs, insureds of USAA, brought a class action against USAA asserting claims for breach of contract and breach of the covenant of good faith and fair dealing, arguing that USAA failed to pay them the medical benefits required under their policies. *Id.* at 2-4. In short, Plaintiffs assert that USAA unfairly refused to pay claims in full when the charge for the medical procedure was higher than USAA's audit software indicated it should be. *Id.* To determine whether a charge was too high, USAA used a product called MDR, which indicated whether a given charge was higher than 80% of the charges for the same procedure in a given geographical area. *Id.* When MDR indicated that a charge was above the 80th percentile, USAA would not pay the charge in full. *Id.*

In May of 2008, the parties entered into the Original Agreement, which provided for monetary payments to qualified insureds and which allowed USAA to continue using MDR if it disclosed the use of MDR to its insureds. *Id.* at 6. The Court preliminarily approved the Original Agreement. Dkt. #47. In January of 2009, however, UnitedHealth Group, Inc. – the parent of the company that owns and maintains MDR – entered into a settlement agreement with the New York Attorney General's Office, agreed to stop maintaining the MDR product, and agreed to contribute money and resources to help establish a new database product that would be run by a not-for-profit organization. Dkt. #103 at 6-7. Because MDR would soon be eliminated, the Original Agreement was no longer viable. As a result, the parties requested that the Court continue the hearing for final approval of the Original

Agreement so they could investigate MDR and the issues surrounding UnitedHealth Group, Inc. *Id.* at 7. The Court granted a continuance and set a deadline of November 6, 2009 for the parties to file an amended settlement agreement.

During the continuance, the parties hired consultants to study MDR, but the results were inconclusive. *Id.* at 9. The parties filed the Amended Agreement on November 13, 2009. The Amended Agreement allows USAA to continue using MDR until March 31, 2010, and still provides for monetary compensation to qualified insureds. *Id.* at 9-10.

**B.  Analysis.**

When considering whether to grant preliminary approval of a settlement agreement, the Court must evaluate the fairness, reasonableness, and adequacy of the proposed settlement. *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1100 (9th Cir. 2008). The Court should consider whether the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious-deficiency, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *see Mehling v. New York Life Ins. Co.*, 246 F.R.D. 467, 472 (E.D. Pa. 2007).

The Objectors argue that the Amended Agreement is unfair and should not be preliminarily approved. Specifically, the Objectors ask the Court to "exclude Washington state citizens who are USAA insureds and claimants" from the Amended Agreement or, in the alternative, to refuse to certify a national settlement class and to award the Objectors their attorneys' fees and costs because "their actions have benefitted the class under a common fund or common benefit principle." Dkt. #104 at 1-2, 4. For the reasons that follow, the Court finds the Objectors' arguments unpersuasive. Dkt. #103.

**1.  Objector's Arguments.**

The Objectors argue that the Court should not grant preliminary approval of the Amended Agreement because it allows the continued use of MDR, a system that pays only

up to the 80th percentile, when other systems are available. Dkt. #104 at 9-10. They further argue that the Court should not include Washington in the national class because "Washington law requires 'all reasonable' medical expenses to be paid," meaning "100 percent, not 80 percent." *Id.* at 10-11. The Original Agreement, they argue, stated that it was only enforceable in accordance with state law, meaning that Washington law would still be available to class members in Washington. *Id.* at 11. But since the Amended Agreement does not include this language, "there is no mechanism to protect Washington Consumers against Arizona laws which are unenforceable in Washington." *Id.* at 12.

At the preliminary approval stage, the Court must consider only whether the settlement agreement "appears to be the product of serious, informed, non-collusive negotiations," is fair, and has no obvious deficiency. *In re NASDAQ*, 176 F.R.D. at 102. The Amended Agreement appears to be fair and the result of non-collusive negotiations between the parties, and the Court cannot conclude that it suffers from an obvious deficiency.

The Objectors argue that the Amended Agreement will impose Arizona's insurance law on a nationwide class, including class members in Washington – the state where Objectors wish to pursue their own class action. But Objectors identify no provision of the Amended Agreement that would apply Arizona insurance law, and the Court has found none. The Amended Agreement establishes a negotiated amount qualified class members will receive, regardless of their State's insurance law. This may provide a basis for arguing that the settlement is not reasonable, but it does not constitute the imposition of Arizona law on the national class.

The Objectors argue that Washington law requires the payment of all reasonable medical expenses, and then asserts that this "means 100 percent." Dkt. #104 at 11. As quoted by Objectors, however, Washington law does not require the payment of 100% of all medical expenses. It requires that 100% of all "reasonable" medical expenses be paid. The Objectors have provided no evidence that a system which pays 100% of all expenses up to the 80th percentile of a geographical region's accepted expenses does not pay 100% of all

- 4 -

*reasonable* expenses. Stated differently, the Objectors provide no evidence that expenses higher than 80% of the expenses charged in the same geographical region for the same service or procedure are reasonable charges for that service or procedure.

Citing an Illinois state case, Objectors argue that this Court lacks jurisdiction to certify a nationwide class. This argument is frivolous. A federal court applying Rule 23 of the Federal Rules of Civil Procedure may certify a nationwide class if the requirements for certification are satisfied.

Finally, the Objectors make a few class certification arguments suggesting that the commonality and predominance requirements of Rule 23 cannot be satisfied because each State has different insurance laws. As noted above, however, the Amended Agreement and the settlement it embodies do not purport to adjudicate any claim under any State's law. Rather, it sets forth a negotiated settlement that will apply to claimants in all States. If the Objectors think that is an unreasonable or unfair settlement, they can opt out of the settlement class or oppose final approval of the settlement.

### 2. Request for attorneys' fees.

The Objectors ask the Court to grant attorneys' fees and costs because, "[w]ithout Objector's efforts, there would have been no disclosure of the fraudulent data base and no trigger for the USAA study." Dkt. #104 at 16. Courts have the authority to award attorneys' fees to objectors who confer a benefit upon the class. *Wininger v. SI Management, L.P.*, 301 F.3d 1115, 1120 (9th Cir. 2002).

The Objectors here fail to show that they substantially benefitted the class. Although they assert that without their participation the Original Agreement would not have been modified and there would have "been no disclosure of the fraudulent data base and no trigger for the USAA study," they provide no evidence. Dkt. #104 at 16-17. Given that the Original Agreement relied heavily on the continued use of the MDR database, the parties would have been forced to renegotiate the Original Agreement, regardless of the intervention of the Objectors, once the future of the MDR data base was called into doubt by the New York

settlement. Moreover, the parties themselves asked the Court to vacate the final settlement hearing and to allow them to conduct the USAA study, knowing that this was necessary given the Original Agreement's heavy reliance on continued use of MDR. Dkt. #90. Moreover, the Amended Agreement creates no pool of funds from which to award attorneys' fees to the Objectors.[1]

## II. Rule 23.

In determining whether to approve a proposed settlement class, the Court must consider whether the proposed class will meet the requirements of Rule 23(a) and 23(b) of the Federal Rules of Civil Procedure. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 619-20 (1997). Under Rule 23(a), a district court may certify a class only if the class is so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims of the representative parties are typical of the claims of the class, and the representatives will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4). Under Rule 23(b)(3), the district court must also find that questions of law or fact common to the class predominate over any questions affecting only individual class members, and that a class action is superior to other available methods for resolving the controversy. Fed. R. Civ. P. 23(b)(3). The party seeking class certification "bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) have been met." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1176 (9th Cir. 2007) (citation omitted).

### A. Rule 23(a).

Plaintiffs have shown that the four requirements of Rule 23(a) – numerosity, commonality, typicality, and adequacy – are met. A proposed class generally satisfies the numerosity requirement if the class has 40 or more members. *See Garrison v. Asotin County*,

---

[1] The attorneys' fees to be paid to class counsel have been negotiated and agreed to by USAA as part of the Amended Agreement. The Court must still approve the settlement, but it contains no provision for USAA to pay the Objectors' fees.

- 6 -

251 F.R.D. 566, 569 (E.D. Wash. 2008); *Wamboldt v. Safety-Kleen Sys., Inc.*, 2007 WL 2409200, *11 (N.D. Cal. Aug. 21, 2007); *see also Jordan v. L.A. County*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982). Plaintiffs allege, and USAA does not disagree, that the proposed class includes thousands of members from across the United States. *See Cohen v. Chicago Title Ins. Co.*, 242 F.R.D. 295, 299 (E.D. Pa. 2007) (courts "are permitted to 'accept common sense assumptions' about the numerosity requirement") (citation omitted); *Garrison*, 251 F.R.D. at 569.

A proposed class satisfies the commonality requirement if there is at least one question of fact or law common to the class. Fed R. Civ. P. 23(a)(2); see *Chesner v. Stewart Title Guar. Co.*, 2008 WL 553773, *5 (N.D. Ohio Jan. 23, 2008). This requirement is construed permissively. *Garrison*, 251 F.R.D. at 569. This case presents such a common question – whether USAA breached its insurance contracts by underpaying Plaintiffs' claims as a result of using the MDR system. *See* Dkt. #43 at 8-9.

The Ninth Circuit has noted that "'the commonality and typicality requirements of Rule 23(a) tend to merge'" because a plaintiff's claim "is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of the other class members and his or her claims are based on the same legal theory." *Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 510-11 (N.D. Cal. 2007) (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003)). Here, the alleged facts underlying Plaintiffs' claims, and the legal theories supporting them, are typical of the putative class members' claims. Plaintiffs' claims sound in contract and are based on allegations that, as a result of USAA's use of MDR, USAA failed to pay the entire amounts required under the policies. Dkt. #43 at 6-8. These claims are the same as those of the putative class members and will differ only in the amount that USAA allegedly failed to pay.

The requirement of adequacy is satisfied if the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Court finds that Plaintiffs' "interest in this litigation is coextensive with that of the unnamed class members,

- 7 -

and they are perfectly capable of vigorously prosecuting this action through their well-qualified counsel." *Chesner*, 2008 WL 553773 at *10. As a result, all four requirements of Rule 23(a) are satisfied.

### B. Rule 23(b)(3).

A class may be maintained under Rule 23(b)(3) where questions of law or fact common to the class predominate over questions affecting only individual members, and a class action is superior to other available methods for resolving the controversy. Moreover, where a class is to be certified for settlement purposes, the Court "need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem Products*, 521 U.S. at 620 (internal citations omitted).

Given the relatively small size of each class member's potential claim and the common elements among the claims of class members, the Court finds that individual class members would not have a strong interest in controlling the prosecution of this litigation. For the same reasons, the Court finds that a class action is superior to other available methods for resolving the controversy.

Other than the Washington action, the Court is not aware of litigation by individual class members. Class members who are presently litigating this dispute in another forum will, however, have the opportunity to opt out of the class or object to final approval of the settlement. Moreover, it is desirable to concentrate the litigation in this forum given that the named Plaintiffs are residents of Arizona. Dkt. #43 at 1.

The Court finds, based on the facts currently before it, Plaintiffs have met the requirements of Rule 23(b)(3).

### III. Conclusion.

Having reviewed the proposed settlement agreement and the supporting memorandum, and having considered the relevant factors and the Objectors' arguments, *see Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998), the Court finds that the proposed settlement appears to be fundamentally fair, adequate, and reasonable. The Court

further finds that the class warrants conditional certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Court will grant the motion for preliminary approval and conditional class certification. Dkt. #103. Terms and phrases used in this Order shall have the same meaning ascribed to them in the Amended Agreement.

This Order supersedes and replaces this court's Order conditionally certifying the settlement class entered on July 3, 2008 (Dkt. #47).

**IT IS HEREBY ORDERED, ADJUDGED, DECREED AS FOLLOWS:**

I.  Pursuant to Fed. R. Civ. P. 23(e)(1) and (2), the Court conditionally certifies for settlement purposes the following amended Settlement Class:

(1) All insureds under automobile policies with Medical Payments, Personal Injury Protection, First Party Benefit, Medical Expense Benefits, Automobile Death and Disability, or any other first-party medical coverage (collectively referred to as "Medpay") issued by USAA and its affiliates, who were injured in covered automobile accidents, and

(a) who submitted, or whose providers submitted, charges for health care services for payment under the Medpay coverage issued by USAA; and

(b) who had charges for the health care services submitted to a medical/fee review audit ("Audit") through Concentra Integrated Services, Inc., doing business as Auto Injury Solutions, or its parents, subsidiaries or affiliates ("AIS") during the period June 27, 2005 through March 31, 2010, which recommended payment of less than the full amount of those submitted charges; and

(c) USAA paid less than the full amount of those submitted health care charges based on:

I) AIS payment recommendations based, in whole or in part, on the Ingenix MDR® Payment System, or

ii) in whole or in part, the application by AIS of a PPO or PPN

agreement determined by AIS to be applicable to the submitted charge, or

    iii) the resolution of the submitted charge by negotiation between USAA, or AIS on behalf of USAA, and the provider or the insured; and

  (d) USAA paid an amount less than the limits of coverage for Medpay benefits under the applicable auto insurance policy; and

(2) Health care providers with valid written assignments of any of the claims identified above.

Excluded from this Settlement Class are the following persons:

(1) Officers, directors, and employees of USAA and Class Counsel;

(2) Members of the judiciary and staff of the United States District Court for the District of Arizona and their immediate families;

(3) All persons who timely elect to opt out of or to exclude themselves from the Settlement Class in accordance with this Order; and

(4) All persons who previously resolved all of their claims by settlement, release, judgment, or arbitration.

The Court expressly reserves the right to determine, should the occasion arise, whether the above-captioned Lawsuit may continue to be certified as a class action for purposes other than settlement, and USAA retains all rights to assert that the Lawsuit may not be certified as a class action except for purposes of this settlement.

  II. The Court hereby appoints the following attorneys to act as Class Counsel representing the amended Settlement Class:

    Charles J. Surrano III
    John N. Wilborn
    Surrano Law Offices
    3200 North Central Avenue, Suite 2500

Phoenix, Arizona 85012

Telephone: (602) 264-1077

III.  The Court appoints as Settlement Administrator:

Rust Consulting, Inc.

625 Marquette Avenue, Suite 880

Minneapolis, MN 55402-2469

IV.  The Court preliminarily approves the proposed amended settlement as sufficiently fair, reasonable, and adequate to allow the dissemination of notice of the proposed settlement to the members of the Settlement Class. This determination permitting notice to the Settlement Class is not a final finding, but a determination that there is sufficient cause to submit the Amended Agreement and proposed settlement to the Settlement Class members and to hold a Final Approval Hearing to consider the fairness, reasonableness, and adequacy of the proposed amended settlement.

V.  The Court makes the following orders regarding Notice to Settlement Class members:

    A.  The Court approves the following forms:

        1.  The Notice of Proposed Amended Class Action Settlement and Release of Claims (the "Mailed Notice") not materially different from Exhibit 1.

        2.  The Notice of Proposed Amended Class Action Settlement and Release of Claims to be sent to health care providers upon request (the "Provider Notice"), not materially different from Exhibit 2.

        3.  The Summary Notice of Proposed Amended Class Action Settlement ("Published Notice") not materially different from Exhibit 3.

B. The Court directs that by April 30, 2010 USAA shall deliver to Class Counsel an affidavit providing what USAA believes, after a reasonable and good-faith search, to be a listing of USAA's non-decedent insureds whose names and last known addresses are reasonably and reliably ascertainable from computer or electronic databases maintained by AIS of USAA's insureds who may fall within the definition of the amended Settlement Class.

C. The Court further directs the Settlement Administrator to mail the Mailed Notice on or before May 30, 2010 unless the date is extended by Order of this Court, to all persons whose names and last known addresses appear on the listing of USAA's insureds provided pursuant to Paragraph V(B) above.

D. The Court further directs the Settlement Administrator promptly to re-mail any notices returned by the Postal Service with forwarding addresses, if any, that are obtained by the Settlement Administrator after a reasonable search.

E. The Court directs that the Published Notice shall be published on or before the Mailed Notice Date (as defined in the Amended Agreement) in the publications listed in Exhibit 4.

F. The Court directs the Settlement Administrator to maintain the Internet website www.medpaysettlement.com for thirty (30) days after the Effective Date (as defined in the Amended Agreement) that shall include, at a minimum, downloadable copies of the Amended Agreement (including exhibits), the Mailed Notice, the Health Care Provider Notice, and the Published Notice (collectively referred to as the "Notices"), and the Insured and Health Care Provider Claim Forms for the Amended Agreement.

G. The Court finds that dissemination of the notices in the manner set forth herein and in the Amended Agreement meets the requirements of Due Process. The Court further finds that the notice is reasonable, and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; is the best practicable notice; and is reasonably calculated, under the circumstances, to apprise members of the amended Settlement Class

of the pendency of the Lawsuit and of their right to object or to exclude themselves from the proposed settlement in the Amended Agreement.

   H. The Court orders the Settlement Administrator to file proof of mailing of the Mailed Notice and publication of the Published Notice at or before the Final Approval Hearing.

  VI. The Court makes the following orders regarding the claim forms for the Settlement Class members.

   A. The Court approves the following forms:

    1. The Insured Claim Form not materially different from the form of Exhibit 5.

    2. The Health Care Provider Claim Form not materially different from the form of Exhibit 6.

   B. The Court directs that the Insured Claim Form shall be distributed with the Mailed Notice.

   C. The Court further orders that any Claim Form postmarked more than thirty (30) days after the Final Approval Hearing shall be untimely and invalid.

  VII. Any member of the Settlement Class (including those members who previously requested exclusion from the settlement in the Original Agreement) who wishes to be excluded from the Settlement Class must comply with the terms set forth in Paragraph 4b of the Notices and submit an appropriate and timely request for exclusion received by the Settlement Administrator and postmarked no later than June 29, 2010. Any Settlement Class member who complies with the terms set forth in Paragraph 4b of the Notices and who timely requests exclusion from the Settlement Class in accordance with the Notices shall not be bound by any orders or judgments entered in this action and shall not be entitled to receive any benefits provided by the settlement in the event it is finally approved by the Court.

  VIII. Any member of the Settlement Class (including those members who previously requested exclusion from the settlement in the Original Agreement) who does not timely

- 13 -

request exclusion as set forth in the Notices shall be bound by all proceedings, orders, and judgments in the Lawsuit, even if such member of the Settlement Class has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Released Claims, as defined in Paragraphs 41 through 43 of the Amended Agreement. Members of the Settlement Class who do not timely request exclusion as set forth in the Notices are also preliminarily enjoined: (I) from filing, commencing, prosecuting, intervening in, or participating as plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding against USAA in any jurisdiction based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances, in the Lawsuit and/or the Released Claims; (ii) from filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding against USAA as a class action on behalf of any members of the Settlement Class who have not timely excluded themselves (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances, in the Lawsuit and/or the Released Claims; and (iii) from attempting to effect an opt-out of a class of individuals in any lawsuit or administrative, regulatory, arbitration, or, other proceeding against USAA based on, relating to, or arising out of the claims and causes of action, or the facts and circumstances, in the Lawsuit and/or the Released Claims.

IX. Any member of the Settlement Class who does not timely request exclusion as set forth in the Notices, and who wishes to object to the fairness, reasonableness, or adequacy of the proposed amended settlement or to the Attorney Fee Award, (including those members who previously filed an objection to the settlement in the Original Agreement or to the request for an Attorneys' Fee Award pursuant to the Original Agreement) must submit an objection no later than June 29, 2010 that complies with the requirements for objections as set forth in Paragraph 4c of the Notices. Failure to adhere to these requirements bars the

objection. The Parties may file responses to any objections no later than seven (7) days prior to the Final Approval Hearing.

X. Any member of the Settlement Class who timely serves a written objection may appear at the Final Approval Hearing, either in person or through an attorney if a Notice of Intention to Appear, as set forth in Paragraph 4c of the Notices, is timely filed with the Clerk of the Court. Failure to adhere to these requirements will bar the Settlement Class members from being heard at the Final Approval Hearing.

XI. USAA shall maintain the post office box in the name of the Settlement Administrator to be used for receiving requests for exclusion, objections, notices of intention to appear, and any other communications from the Settlement Class members. Only the Settlement Administrator, Class Counsel, USAA, the Court, the Clerk of the Court, and their designated agents shall have access to this post office box, except as otherwise provided in the Amended Agreement.

XII. The Settlement Administrator shall, within five (5) business days of receipt, furnish Class Counsel, counsel for USAA, and any counsel for Named Plaintiffs with copies of any and all written objections, requests for exclusion, notices of intention to appear, or other communications from Settlement Class members that come into its possession, except as otherwise provided in the Amended Agreement.

XIII. Any petition for award of attorneys' fees or reimbursement of litigation costs and expenses, as described in Paragraph 37 of the Amended Agreement, shall be filed no later than April 30, 2010. Any response or objection to that petition shall be filed no later than June 29, 2010.

XIV. A Final Approval hearing shall be held on **August 25, 2010 at 3:30 p.m.** for the purpose of determining (a) whether the proposed settlement is fair, reasonable, and adequate and should be finally approved by the Court; (b) whether to issue a final judgment without material alteration from the form in Exhibit 12 to the Amended Agreement; and (c)

ruling on any petition for award and approval of attorneys' fees or reimbursement of litigation costs and expenses.

XV. The Court reserves the right to adjourn or to continue the Final Approval Hearing, or any further adjournment or continuance thereof, without further notice other than announcement at the Final Approval Hearing or at any adjournment or continuance thereof; and to approve the settlement with modifications, if any, consented to by Class Counsel and USAA without further notice.

XVI. All pretrial proceedings and deadlines in this lawsuit, including the deadlines in the Amended Case Management Order, are stayed and suspended until further order of this Court.

DATED this 16th day of December, 2009.

_____
David G. Campbell
United States District Judge